IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 12 2007

JAMES N. ___, Clerk

By: ___ Deputy Clerk

AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE CO.,

   Plaintiff,

v.

PRESTON WARD, DERICK WARD, and
ANN VINES,

   Defendants.

CIVIL ACTION NO.

1:05-CV-3320-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiff's Motions to Dismiss Counterclaims [10], [14], and [15], defendants' Motion to Add a Party [28], and defendants' Motions to Amend Counterclaims [29] and [43]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motions to Dismiss [10], [14], and [15] should be **GRANTED in part** and **DENIED in part**, defendants' Motion to Add a Party [28] should be **GRANTED as unopposed,** and defendants' Motions to Amend [29] and [43] should be **GRANTED.**

### BACKGROUND

This diversity action involves two life insurance policies owned by and insuring the life of Grongie K. Ward. (Compl. [1] at ¶¶ 40-46.) Plaintiff American General issued the policies. (*Id.* at ¶¶ 12,

AO 72A
(Rev.8/82)

30.)   Defendants Preston Ward, Derick Ward, and Ann Vines are intended beneficiaries of the policies.  (*Id.* at ¶¶ 13, 26.)

In September, 1992, Nita Faye Ward applied for a $25,000 insurance policy on the life of her then sixteen-year-old son, Grongie Ward.  (*Id.* at ¶ 9.)  Plaintiff accepted the application and issued Policy No. 192228209, insuring the life of Grongie Ward in the amount of $25,000.  (*Id.* at ¶ 12.)  The policy named Nita Ward as the primary beneficiary and Grongie Ward as the policy owner.  (Compl. [1] at ¶ 11.)

In August, 2001, plaintiff processed a beneficiary change request for Policy No. 192228209.  (*Id.* at ¶ 13.)  Pursuant to the request, plaintiff changed the primary beneficiary to Grongie's father, defendant Preston Ward, and added Grongie's brother, defendant Derick Ward, as a secondary beneficiary.  (*Id.*)

In September, 2002, plaintiff received a policy change application to increase the face amount of Policy No. 192228209 to $50,000 and to add an accidental death rider, a premium waiver rider, and a children's term rider.  (*Id.* at ¶ 14.)  Grongie purportedly signed the policy change application, although plaintiff now believes that his signature was forged.  (*Id.* at ¶ 16.)  In reliance upon Grongie's signature, plaintiff increased the coverage on Policy No. 192228209 to $50,000 and added the requested riders.  (Compl. [1] at ¶ 17.)

2

In October, 2002, Grongie submitted an application to plaintiff for an additional $150,000 twenty-year term policy. (*Id.* at ¶ 21.) In conjunction with the application, plaintiff required Grongie to undergo a medical exam and a blood and urine analysis. (*Id.* at ¶ 22.) Plaintiff denied the application when Grongie screened positive for cocaine metabolites. (*Id.* at ¶ 23.)

In May, 2003, plaintiff received another policy change application concerning Policy No. 192228209. (*Id.* at ¶ 19.) The application requested an increase in the face amount of the policy to $125,000. (Compl. [1] at ¶ 19.) Plaintiff denied the request, based on Grongie's recent positive cocaine screening. (*Id.* at ¶ 20.)

In September, 2003, plaintiff received an application for a $500,000 ten-year renewable term life insurance policy from "Katia Ward." (*Id.* at ¶ 25.) Although plaintiff did not realize it at the time, "Katia Ward" is the same person as Grongie Ward. (*Id.* at ¶ 28.) Plaintiff contends that Grongie intentionally used the name "Katia" to deceive plaintiff, because plaintiff had recently denied Grongie's requests for additional insurance.[1] (*Id.* at ¶ 29.) Unaware of the true identity of the applicant, plaintiff accepted the application and issued Policy No. 203101093, insuring the life of

---

[1]   Plaintiff also claims that Grongie's signature on the application was forged, and that the application contained other material misrepresentations. (Compl. [1] at ¶¶ 33-34.)

3

Katia Ward in the amount of $500,000. (Compl. [1] at ¶ 30.) The policy designated defendant Preston Ward as the primary beneficiary, and defendant Ann Vines, Grongie's sister, as the secondary beneficiary. (*Id.* at ¶ 26.)

It is believed that Grongie Ward died on February 15, 2004; however, his body has never been found. (*Id.* at ¶ 26.) Following Grongie's presumed death, defendant Preston Ward submitted a Claimant's Statement to plaintiff requesting a $500,000 benefit related to Policy No. 203101093 and a $50,000 benefit related to Policy No. 192228209.[2] (*Id.* at ¶ 37.) Plaintiff subsequently filed this action seeking a declaratory judgment that Policy No. 203101093 and the $25,000 increase in coverage and additional riders in Policy No. 192228209 were void because Grongie's signature on both applications was forged, and the applications contained material misrepresentations. (*Id.* at ¶¶ 40-46.)

In their Answer, defendants assert numerous counterclaims based on state and federal law. (Defs.' Answer and Counterclaims [5].) Plaintiff has filed motions to dismiss the majority of these claims under Rules 12(c) and 9(b) of the Federal Rules of Civil Procedure. (Pl.'s Motions. to Dismiss [10], [14], [15].) In response,

---

[2]    Defendants Derick Ward and Ann Vines have not submitted a Claimant's Statement, but they are potential claimants under the policies. (Compl. [1] at ¶ 38.)

4

AO 72A
(Rev.8/82)

defendants have filed two motions to amend their counterclaims, and a motion to add a party defendant. (Defs.' Motion. to Add a Party [28] and Motions. to Amend [29], [43].) All of these motions are presently before the Court.

### DISCUSSION

### I.   Defendants' Motion to Add a Party

Defendants have filed a motion to add Preston Ward as a party defendant in his capacity as administrator of the estate of Grongie Ward. (Defs.' Motion. to Add a Party [28].) Defendants have attached to the motion a copy of Grongie's death certificate and an Order from the Gwinnett County Probate Court naming Preston Ward as the administrator of Grongie's estate. (*Id.* at Ex. 3.) Defendants also have attached Preston Ward's affidavit stating that he is the sole survivor of Grongie Ward, and that Grongie was not married and had no children when he died. (*Id.* at Ex. 2.)

Plaintiff does not dispute the facts in Preston Ward's affidavit, and does not oppose defendants' motion. (*See* Pl.'s Resp. to Defs.' Motion. to Amend [41] at 5, n. 4.) Accordingly, defendants' motion to add Preston Ward as a party defendant in his representative capacity as the administrator of Grongie Ward's estate is **GRANTED as unopposed.**

5

## II.   **Defendants' Motions to Amend**

Defendants have filed two motions to amend their counterclaims.
(Defs.' Motions. to Amend [29], [43].)   Defendants' motions are
governed by Rule 15(a), which provides that:

> A party may amend the party's pleading once as a matter
> of course at any time before a responsive pleading is
> served . . . .  Otherwise a party may amend the party's
> pleading only by leave of court.

FED. R. CIV. PLAINTIFF. 15(a).  As plaintiff has filed an Answer, leave
of Court is required to amend defendants' counterclaims.  (*See* Pl.'s
Reply to Defs.' Counterclaims [7].)

Rule 15(a) instructs that leave to amend "shall be freely given
when justice so requires."  *Id.*  Courts therefore generally grant
leave to amend unless there is a substantial reason to deny it, such
as "undue delay, undue prejudice to defendants, [or] futility."
*Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1218 (11th Cir. 2004);
*Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988).

Defendants' proposed amendments are minor.  The first amendment
adds the phrase "upon information and belief" and other introductory
remarks intended to explain the lack of specificity in defendants'
original counterclaim, which is allegedly due to plaintiff's "illicit
and successful concealment" of the relevant facts.  (Defs.' Proposed
Amended Counterclaims [30].)  The second amendment provides exhibits
that were inadvertently omitted from the first amendment.  (Defs.'

6

Second Proposed Amended Counterclaims [44].)

There is no substantial reason to deny the above proposed amendments. There has been no undue delay, and plaintiff does not argue that it will be prejudiced by the amendments. Although plaintiff suggests that the proposed amendments are futile, there is no harm in considering defendants' slightly more detailed assertions in ruling on plaintiff's motions to dismiss. Accordingly, defendants' motions to amend are **GRANTED**.

### III.  **Plaintiff's Motions to Dismiss State and Federal Claims**

Plaintiff has filed a motion to dismiss defendants' state and federal claims pursuant to Rule 12(c). (Pl.'s Motions. to Dismiss [14], [15].) In ruling on plaintiff's motions, the Court must assume defendants' allegations are true, and construe all facts and inferences in the manner most favorable to defendants. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005). Dismissal is only appropriate if defendants "can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Horsley v. Feldt,* 304 F.3d 1125, 1131 (11th Cir. 2002).

#### A.    State Law Claims

Plaintiff contends that the majority of defendants' state law claims are not viable under Georgia law.[3] (Pl.'s Motion. to Dismiss

---

[3]  Plaintiff does not seek dismissal of defendants' state law claims for breach of contract or intentional infliction of emotional

7

[15] at 3.) With the exception of a state RICO claim asserted on behalf of Grongie's estate, the Court agrees.

### 1) Claims for Criminal Violations

Defendants assert a number of claims based on plaintiff's alleged violation of various Georgia criminal statutes. (Defs.' Counterclaims [5] at ¶¶ 148-156.) Specifically, defendants claim that plaintiff is liable for violating O.C.G.A. §§ 16-8-2, 16-8-3, and 16-8-4, prohibiting theft by taking, deception, and conversion. (*Id.*)

Under Georgia law, the violation of a criminal statute "does not automatically give rise to a civil cause of action." *Oswald v. Am. Nat'l Can Co.,* 194 Ga. App. 882, 883, 392 S.E. 2d 26, 27 (1990). Instead, where a criminal statute evidences no intent to create a private cause of action, civil liability "must be determined under the applicable provisions of [state] tort law," if any. *Rolleston v. Huie,* 198 Ga. App. 49, 50, 400 S.E. 2d 349, 351 (1990). None of the statutes cited by defendants purport to create a private cause of action. Plaintiff's motion to dismiss defendants' claims based on various Georgia criminal statutes is therefore **GRANTED**.

---

distress. (Pl.'s Mot. to Dismiss State Law Claims [15] at 3.) Plaintiff also does not seek dismissal of any RICO claims based on predicate acts directed toward defendants personally. (*Id.*)

8

### 2.   Common Law Conversion

Defendants also assert a claim for common law conversion. (Defs.' Counterclaims [5] at ¶¶ 154-156.) This claim is based on plaintiff's failure to pay proceeds pursuant to the terms of Grongie's life insurance policies. (*Id.*) Georgia law is clear that a claim for conversion "does not lie on account of a mere failure to pay money due under a contract." *Morris v. Nat'l W. Life Ins. Co.,* 208 Ga. App. 443, 444, 430 S.E. 2d 813, 815 (1993). *See also, Faircloth v. A.L. Williams & Assoc., Inc.,* 206 Ga. App. 764, 768, 426 S.E. 2d 601, 605 (1992)(holding that "contract debt . . . was not subject to an act in tort for conversion") and *Unified Serv., Inc. v. Home Ins. Co.,* 218 Ga. App. 85, 87, 460 S.E. 2d 545, 547 (1995)(noting that "a tort action cannot be based on the breach of a contractual duty only"). Accordingly, plaintiff's motion to dismiss defendants' common law conversion claim is **GRANTED**.

### 3.   Money Had and Received

Defendants' claim for "money had and received" is likewise based on plaintiff's retention of death benefits allegedly due under Grongie's insurance policies. (Defs.' Counterclaims [5] at ¶ 157.) Defendants cannot recover on a "money had and received" theory for several reasons. First, "money had and received" is an equitable theory that applies only when there is no legal contract. *Baghdady v. Cent. Life Ins. Co.,* 224 Ga. App. 170, 171, 480 S.E. 2d 221, 224

AO 72A
(Rev.8/82)

(1996).  Defendants allege that there is a contract, and that they are its intended beneficiaries.  (*Id.*)  Consequently, defendants cannot assert a claim for "money had and received."

Moreover, to prevail on this claim, defendants must show that plaintiff received money from defendants "that in equity and good consci[ence] [plaintiff] should not be permitted to keep."  *Taylor v. Powertel, Inc.,* 250 Ga. App. 356, 359, 551 S.E. 2d 765, 770 (2001).  Defendants do not allege that they made any payments to plaintiff, or that plaintiff otherwise received any money from defendants.[4]  For this additional reason, plaintiff's motion to dismiss defendants' claim for "money had and received" should be **GRANTED.**

### 4.   Breach of Fiduciary Duty

Defendants assert a claim for breach of fiduciary duty on behalf of themselves and Grongie.  (Defs.' Counterclaims [5] at ¶¶ 159, 161.)  Under Georgia law, a life insurance company owes no fiduciary duty to its insured, or to the intended beneficiaries of a contract for insurance.  *State Farm Fire & Cas. Co. v. Fordham,* 148 Ga. App. 48, 51, 250 S.E. 2d 843, 845 (1978) ("No fiduciary or confidential relationship exists between an insured and the insurer and his agents.").  *See also, Monroe v. Board. of Regents of Univ. Sys. of*

_____

[4]   To the extent defendants seek to recover payments made by Grongie, plaintiff specifically stated in its Complaint that it will return all premiums if the policies are declared void.  (Compl. [1] at ¶ 46.)

10

*Georgia,* 268 Ga. App. 659, 662, 602 S.E. 2d 219, 222 (2004)("Generally, no fiduciary relationship exists between and insured and his or her insurer."). Accordingly, plaintiff's motion to dismiss defendants' claim for breach of fiduciary duty is **GRANTED**.

>    5.   Georgia RICO

Finally, defendants assert claims under Georgia's Racketeer Influenced & Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-4-1, *et seq.* (Defs.' Counterclaims [5] at ¶¶ 182-197.) Plaintiff argues that this claim should be dismissed to the extent defendants are attempting to recover for acts directed towards, or damages incurred by, Grongie and other unnamed African Americans. (Pl.'s Motion. to Dismiss [15] at 8.)

Georgia's RICO statute provides that:

> It is unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

O.C.G.A. § 16-14-4 (a). The statute defines "racketeering activity" to include the commission of a long list of crimes, including theft, mail fraud, and wire fraud. *Id.* Pursuant to RICO's civil provision, a person "who is injured *by reason of* any violation of [the RICO statute]" has a cause of action for treble and punitive damages. *Maddox v. S. Eng'g Co.,* 231 Ga. App. 802, 805, 500 S.E. 2d 591, 593 (1998) (emphasis in original).

AO 72A
(Rev.8/82)

Defendants allege that plaintiff has engaged in prohibited racketeering activities directed towards "Grongie, [d]efendants and other African Americans living in the South." (Defs.' Counterclaims [5] at ¶ 183.) Specifically, defendants claim that plaintiff devised a scheme to defraud Grongie, defendants, and other African Americans by charging higher premiums and systematically depriving them of benefits. (*Id.* at ¶ 185.) According to defendants, plaintiff effectuated its scheme through a combination of RICO-prohibited theft, mail fraud, and wire fraud. (*Id.* at ¶¶ 187-88, 190-91.)

Under Georgia's civil RICO provision, defendants can only recover for injuries incurred as a result of predicate acts directed towards themselves, as opposed to predicate acts directed towards third parties. *Nicholson v. Windham,* 257 Ga. App. 429, 430, 571 S.E. 2d 466, 468 (2002) (upholding dismissal of RICO claim based on predicate acts that were not directed towards plaintiff). *See also Waldschmidt v. Crosa,* 177 Ga. App. 707, 709, 340 S.E. 2d 664, 666 (1986) (holding that plaintiffs "must allege 'and can only recover to the extent that [they have] been injured . . . *by the conduct constituting the violation*'")(emphasis in original)(quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985)). To the extent defendants' RICO claim depends on acts directed towards, or harm incurred by, individuals other than themselves, plaintiff's motion to dismiss is therefore **GRANTED.**

12

However, defendant Preston Ward may be able to recover in his representative capacity for acts directed toward, or harm incurred by, Grongie. Under Georgia law, a tort action does not abate by the death of the injured party, but "survive[s] to the personal representative of the [decedent]." O.C.G.A. § 9-2-41. Pursuant to § 9-2-41, Grongie's potential RICO claims vested in Grongie's estate upon his death. *Id.* The Court has granted defendants' motion to add Preston Ward as a party defendant in his representative capacity as the administrator of Grongie's estate. Accordingly, plaintiff's motion to dismiss Preston Ward's RICO claim, asserted on behalf of Grongie's estate, is **DENIED.**

### B.   Federal Claims

Defendants contend that plaintiff discriminated against Grongie, defendants, and other African Americans in issuing insurance policies and settling claims. (Defs.' Counterclaims [5] at ¶¶ 123-146.) Based on this allegation, defendants assert claims against plaintiff under the Fourteenth Amendment and various federal civil rights statutes, including 42 U.S.C. §§ 1981, 1982, 1985, 1986 and 1988. (*Id.*) Defendants also assert federal claims against plaintiff for mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1342 and for violations of 42 U.S.C. § 241. (*Id.*) Plaintiff contends that defendants lack standing to assert federal discrimination claims under §§ 1981 or 1982, and that defendants' remaining federal claims

13

are not viable as a matter of law.  (Pl.'s Motion. to Dismiss [10] at 2.)

## 1.   Discrimination Claims

"[I]t is elementary that [defendants] ha[ve] no standing to sue for the deprivation of the civil rights of others." *Brown v. LaGrange Indep. Sch. Dist.*, 187 F.2d 20, 25 (5th Cir. 1951). *See also Granite State Outdoor Adver. v. City of Clearwater,* 351 F.3d 1112, 1116 (11th Cir. 2003) (noting that a party "may assert only his or her own rights and cannot raise the claims of third parties not before the court"). Accordingly, plaintiff's motion to dismiss defendants' claim to recover personally for discrimination directed towards Grongie or other African Americans is **GRANTED.**

Neither, in this case, can defendants recover for discriminatory acts allegedly directed towards defendants themselves. It is not at all clear from the original or either amended complaint that defendants were the target of any discriminatory acts. (*See* Defs.' Counterclaims [5] at ¶¶ 123-137.) In any case, none of the federal statutes cited by defendants support their claim for recovery.

Defendants primarily rely on 42 U.S.C. §§ 1981 and 1982. (*Id.*) Section 1981 prohibits "intentional race discrimination in the making and enforcement of public and private contracts."[5]  *Ferrill v. Parker*

---

[5]   Section 1981 provides that:

14

*Group, Inc.,* 168 F.3d 468, 472 (11th Cir. 1999). As such, a claim under § 1981 must be based on a contractual relationship. *See Kim v. Dial Serv. Int'l Inc.,* 1997 WL 5902 *6 (S.D.N.Y. 1997) ("To bring a claim under Section 1981, a plaintiff must have a contractual relationship with the defendant."). Defendants do not allege that they had a contract with plaintiff, or that they attempted to enter into a contract with plaintiff. Moreover, defendants' status as intended beneficiaries of Grongie's contract does not give them standing to pursue a claim under § 1981. *See Danco, Inc. v. Wal-Mart Stores, Inc.,* 178 F.3d 8, 14 (1st Cir. 1999) ("Nothing in section 1981 provides a personal claim . . . to one who is merely affiliated . . . with a contracting party") and *Sims v. Order of United Commercial Travelers of Am.,* 343 F.Supp. 112, 115 (Defendant. Mass. 1972)(finding that intended beneficiaries of an insurance contract had no standing to pursue a § 1981 claim).

---

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

42 U.S.C. § 1981.

Section 1982 is similarly limited.  It provides that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.  Defendants do not allege that plaintiff impeded their ability to "inherit, purchase, lease, sell, hold [or] convey" property.  *See Sims,* 343 F.Supp. at 116 (explaining that the right to 'hold' property under § 1982 does not include a right to require a third party to convey insurance proceeds to an intended beneficiary) and *Nat'l Life & Accident Ins. Co. v. H.E. Thornton,* 125 Ga. App. 589, 590, 188 S.E. 2d 435, 436 (1972)(indicating that insurance proceeds are not "heritable property" under Georgia law).  Section 1982 is therefore inapplicable.

Defendants also assert a claim under § 1985(3), which provides recovery for injury resulting from a conspiracy to deprive a person of the equal protection of the law.  42 U.S.C. § 1985(3).  To prove a private conspiracy in violation of § 1985(3), defendants must show "that the conspiracy aimed at interfering with rights that are protected against private as well as official encroachment."  *Park v. City of Atlanta,* 120 F.3d 1157, 1161 (11th Cir. 1997) (quoting *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-78 (1993)).  Examples include the rights, guaranteed by the Thirteenth Amendment, of interstate travel and to be free from involuntary servitude.  *Id.*

16

at 1162.  Plaintiff's alleged interference with defendants' right to life insurance proceeds clearly does not qualify.  *See Trawinski v. United Tech.,* 313 F.3d 1295, 1299 (11th Cir. 2002)("The list of rights protected from both official and private encroachment is short") (citing *Bray,* 506 U.S. at 278).

In addition, defendants' § 1985(3) claim is barred by the intracorporate conspiracy doctrine.  *See Dickerson v. Alachua County Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000).  In order to prevail under § 1985(3), defendants must show "an agreement between 'two or more persons' to deprive [defendants] of [their] civil rights." *Id.* A corporation "cannot conspire with itself any more than a private individual can." *Id.  See also Holloman v. Jacksonville Hous. Auth.,* 2007 WL 245555 * 3 (11th Cir. 2007)("under the intracorporate conspiracy doctrine a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves").  Yet, defendants do not assert or even suggest that any corporation or individual besides plaintiff was involved in the alleged "conspiracy."  For this additional reason, defendants' § 1985(3) claim must be dismissed.  *Accord Denny v. City of Albany,* 247 F.3d 1172, 1189 (11th Cir. 2001)(upholding the dismissal of plaintiff's  § 1985(3) claim under the intracorporate conspiracy doctrine).

Having dismissed defendants' §§ 1981, 1982 and 1985 claims,

17

there is no basis for their claims under §§ 1986 and 1988. "The text of § 1986 requires the existence of a § 1985 conspiracy." *Park,* 120 F.3d at 1160. There being no such conspiracy in this case, defendants' § 1986 claim is not viable. *Id. See also, Creative Env'ts, Inc. v. Estabrook,* 680 F.2d 822, 834-35 (1st Cir. 1982)("With no section 1985(3) claim to support it, [plaintiff's] section 1986 claim must similarly fail."). The dismissal of defendants' §§ 1981, 1982 and 1985 claims similarly precludes defendants' claim to the remedies available to "prevailing parties" in a civil rights action under § 1988. *See* 42 U.S.C. § 1988(b).

In short, there is no basis for defendants to recover personally from plaintiff on any of their federal civil rights claims. Accordingly, plaintiff's motion to dismiss defendants' federal civil rights claims based on discriminatory acts directed towards defendants personally is **GRANTED.**

As with defendants' RICO claim, however, Preston Ward may be able to recover, in his representative capacity, for discriminatory acts directed towards Grongie. Defendants allege that plaintiff discriminated against Grongie on the basis of his race by treating him less favorably than white insureds in the making and enforcement of the subject insurance policies. (Defs.' Counterclaims [5] at ¶¶ 126-127.) As Grongie allegedly entered, or attempted to enter, into at least two contracts of insurance with plaintiff, his §§ 1981 and

18

1988 claims do not suffer from the same deficiency as defendants'
personal claims.[6]

Federal law does not specifically provide for, but also does not
foreclose, survival of a civil rights action. *Brazier v. Cherry,* 293
F.2d 401, 407 (5th Cir. 1961); *Hall v. Wooten,* 506 F.2d 564, 566 (6th
Cir. 1974). To determine whether an action survives, the Court must
refer to the law of the state in which it sits. *Brazier,* 293 F.2d at
407; *Hall,* 506 F.2d at 566. As discussed, Georgia law recognizes
survival actions. (Pl.'s Motion. to Dismiss [10] at 16.) Pursuant
to O.C.G.A. §§ 9-2-40 and 9-2-41, a "legal representative" can pursue
a personal injury or tort action on behalf of a decedent's estate.
*Georgia Osteopathic Hosp., Inc. v. O'Neal,* 198 Ga. App. 770, 773, 403
S.E. 2d 235, 240 (1991)("[u]nder the plain language of OCGA § 9-2-41
. . . . , upon the death of [the decedent] these causes of action vest
[] in the administrator of his estate")(quoting *Walden v. John
Defendant. Archbold Mem'l Hosp.,* 197 Ga. App. 275, 277, 398 S.E. 2d
271 (1990)). Defendant Preston Ward has been appointed the
administrator of Grongie's estate, and has been added as a party
defendant in his representative capacity. Accordingly, he. has
standing, and is the proper party, to pursue any surviving civil

---

[6] For the reasons discussed above, defendants' allegations do
not support a claim under §§ 1982, 1985, or 1986 on behalf of
Grongie's estate.

19

rights claims on behalf of Grongie's estate.  Plaintiff's motion to dismiss defendant Preston Ward's §§ 1981 and 1988 claims, asserted in his representative capacity, is therefore **DENIED.**

2.   Fourteenth Amendment Claim

Defendants also assert a claim directly under the Fourteenth Amendment of the United States Constitution, based on the same allegations of discrimination described above. (Defs.' Counterclaims [5] at ¶¶ 145-146.)  Where federal statutes provide a remedy to redress alleged constitutional violations, "there can be no independent implied cause of action under the Constitution." *Hamilton v. City of New York,* 1999 WL 632851 at * 5 (S.D.N.Y. 1999). *See also, Lehman v. Doe,* 66 Fed. Appx. 253, 255 (2nd Cir. 2003)("when § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available").  Assuming defendants' Fourteenth Amendment rights were violated, defendants must vindicate those rights through the federal discrimination statutes. *See Anderson v. Edwards,* 505 F.Supp. 1043, 1045 (S.D. Ala. 1981) (noting that "no implied cause of action exists" under the Fourteenth Amendment) and *LeGare v. Univ. of Pennsylvania Med. Sch.,* 488 F. Supp. 1250, 1255 (D.C. Pa. 1980)("the existence of an 'effective and substantial' federal statutory remedy precludes implication of a constitutional remedy").  Accordingly, plaintiff's motion to dismiss defendants' independent claim under the Fourteenth

20

AO 72A
(Rev.8/82)

Amendment is **GRANTED**.

>    3.   Mail and Wire Fraud Claims

Defendants assert claims for mail and wire fraud pursuant to 18 U.S.C. §§ 1341 and 1342.[7] (Defs.' Counterclaims [5] at ¶¶ 141-144.) The federal mail and wire fraud statutes do not, in and of themselves, create a private right of action. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard,* 500 F.2d 634, 636 (5th Cir. 1974)(describing the mail and wire fraud statutes as "purely penal") and *Wisdom v. First Midwest Bank,* 167 F.3d 402, 408 (8th Cir. 1999)("Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes"). Defendants may rely on plaintiff's alleged violation of the mail and wire fraud statutes to supply the necessary predicate acts to support their RICO claim. *See* O.C.G.A. § 16-14-3(9)(A). However, defendants cannot directly recover civil damages under §§ 1341, 1342, or 1343. To the extent they are attempting to do so, plaintiff's motion to dismiss is **GRANTED**.

>    4.   Claims Under 42 U.S.C. § 241

Defendants inexplicably assert a claim based on plaintiff's "egregious violations" of 42 U.S.C. § 241. (Defs.' Counterclaims [5]

---

[7] Neither § 1341 nor § 1342 addresses wire fraud. *See* 18 U.S.C. §§ 1341 and 1342. The Court assumes that defendants intended to cite 18 U.S.C. § 1343.

AO 72A
(Rev.8/82)

at ¶¶ 138-140.)   Section 241 defines the powers and duties of the
Secretary of Health and Human Services.   *See Synthetic Organic Chem.
Mfrs. Ass'n v. Dep't of Health and Human Serv.,* 720 F.Supp. 1244,
1247 (W.D. La. 1989)(discussing § 241).   It cannot conceivably apply
to this case.   Accordingly, plaintiff's motion to dismiss any claims
based on 42 U.S.C. § 241 is **GRANTED**.

## IV.   Plaintiff's Motion to Dismiss Fraud Claims

Defendants have asserted state law claims against plaintiff for
"fraud, deception and false swearing." (Defs.' Counterclaims [5] at
¶¶ 166-179.)   Plaintiff moves to dismiss these claims pursuant to
Rule 9(b) of the Federal Rules of Civil Procedure.[8]   (Pl.'s Motion.
to Dismiss [14].)

Rule 9(b) requires that "[i]n all averments of fraud or mistake,
the circumstances constituting fraud or mistake shall be stated with
particularity." FED. R. CIV. PLAINTIFF. 9(b).   To comply with Rule
9(b), defendants must set forth:

   1)     precisely  what  statements  were  made  in what
documents or oral representations or what omissions
were made, and

   2)     the time and place of each such statement and the
person responsible for making (or, in the case of
omissions, not making) same, and

---

[8]   Plaintiff cites Rule 9(c).   (Pl.'s Mot. to Dismiss [14].)
Rule 9(c) concerns pleading requirements for conditions precedent.
FED. R. CIV. P. 9(c).   The Court presumes plaintiff intends to rely
upon Rule 9(b), which concerns pleading requirements for fraud.

AO 72A
(Rev.8/82)

3)    the content of such statements and the manner in
      which they misled [defendants], and

4)    what [plaintiff] obtained as a consequence of the
      fraud.

*Clausen v. Lab. Corp. of Am.,* 290 F.3d 1301, 1310 (11th Cir.
2002)(citing *Ziemba v. Cascade Int'l Inc.,* 256 F.3d 1194, 1202 (11th
Cir. 2001)).   *See also Cooper v. Blue Cross & Blue Shield,* 19 F.3d
562, 568 (11th Cir. 1994)("The . . . complaint must allege the
details of the . . . allegedly fraudulent acts, when they occurred,
and who engaged in them.")

     Defendants' allegations do not come close to meeting this
standard.    (Defs.' Counterclaims [5] at ¶¶ 166-179; Amended
Counterclaims [30] at ¶¶ 161-174.)    Defendants do not aver any
statement or misleading omission whatsoever, much less the time and
place of the statement, or the person responsible for making it.
(*Id.*)    Essentially, defendants' fraud claims rely upon their
assertions that plaintiff:    1) targeted undereducated African
Americans and engaged in aggressive and predatory marketing practices
to sell insurance policies to them; and 2) denied benefits to African
American claimants more frequently than it denied benefits to white
claimants.    (*Id.*)    These actions do not necessarily constitute
actionable fraud, which requires, among other things, a false
representation and justifiable reliance. *See Johnson v. Rodier,* 242
Ga. App. 496, 498, 529 S.E. 2d 442, 444 (2000).   Hence Rule 9(b)'s

requirement that litigants identify some representation or omission in support of a fraud claim.

Rule 9(b) may be applied less stringently when "specific 'factual information [about the fraud] is peculiarly within [the opposing party's] knowledge or control.'" *Hill v. Morehouse Med. Assoc., Inc.,* 2003 WL 22019936 * 3 (11th Cir. 2003). However, that exception is not applicable to any misrepresentations made directly to defendants, which are presumably within the knowledge of both parties.

As for representations made to Grongie, which might support a fraud claim on behalf of Grongie's estate, defendants are permitted to plead that "upon information and belief" plaintiff made certain misrepresentations to Grongie. *Hill,* 2003 WL at *3. However, defendants must still identify what they believe those representations to be, and plead a statement of facts upon which their belief is based. *Id.* (stating that a pleading "upon information and belief" must allege "factual allegations that make [a] theoretically viable claim plausible"). They have not done so.

As defendants have not met the requirements of Rule 9(b), the Court **GRANTS** plaintiff's motion to dismiss defendants' fraud claims. However, the Court will give defendants one final opportunity to amend their claims to meet the particularity requirements of Rule 9(b). *See Summer v. Land & Leisure, Inc.,* 664 F.2d 965, 971 (11th

24

AO 72A
(Rev.8/82)

Cir. 1981)(noting that "dismissal for failure to comply with Rule 9(b) is almost always with leave to amend") and *Cooper*, 19 F.3d at 568-69 (holding that plaintiff was "entitled to one chance to amend the complaint and bring it into compliance" with Rule 9(b)).

Defendants should file their amended fraud claims by **Friday, April 13, 2007.** The Court emphasizes that the amended claims must identify a false representation or misleading omission and set forth "the details of [plaintiff's] allegedly fraudulent acts, when they occurred, and who engaged in them." *Hill*, 2003 WL at * 3. If defendants' amended fraud claims do not meet this standard, they will be dismissed. Plaintiff should file any motion to dismiss the amended fraud claims **within thirty (30) days** of defendants' proposed amendment.

Given the delay in discovery caused by litigation of these multiple pre-discovery motions, discovery shall begin promptly on **April 13, 2007.** The parties shall likewise file a Joint Preliminary Planning Report and Discovery Schedule by that date. Absent a request for additional discovery time, the case will be on a four-month discovery track. Any discovery that would be pertinent only to the above-described fraud claims may await resolution of any future motion to dismiss those claims on Rule 9(b) grounds. The Court does not expect litigation of any future motion to dismiss the fraud claims to substantially extend the discovery period, however, as the

25

Court assumes that most information concerning the fraud claims would likely also be discoverable in connection with the other remaining claims.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** plaintiff's Motions to Dismiss [10], [14], and [15], **GRANTS as unopposed** defendants' Motion to Add a Party [28], and **GRANTS** defendants' Motions to Amend [29] and [43].

SO ORDERED, this _12_ day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

26

AO 72A
(Rev.8/82)