FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 02 2008

JAMES N. HATTEN, Clerk
By: [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE CO.,

    Plaintiff,

v.

PRESTON WARD, DERICK WARD, and
ANN VINES,

    Defendants.

CIVIL ACTION NO.

1:05-CV-3320-JEC

### O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiff's Motion to Dismiss Defendants' Amended Fraud and RICO Claims [54], defendants' Motions to Exceed Page Limits [58] and [71], defendants' Motions to Supplement their Counterclaim and Response [60] and [61], plaintiff's Motion to Strike Marcus Pittman's Expert Report [70], and defendant's Motion for Leave to Revise Pittman's Expert Report [75] and [76]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion to Dismiss [54] should be **GRANTED**, defendants' Motions to Exceed Page Limits [58] and [71] should be **GRANTED**, defendants' Motions to Supplement [60] and [61] should be **DENIED**, plaintiff's Motion to Strike [70] should be **GRANTED**, and defendant's Motion for Leave to Revise Pittman's Expert Report [75] and [76] should be **GRANTED**.

## BACKGROUND

The facts underlying this action are discussed in detail in the Court's prior order. (Order [48].) Briefly, defendants are the beneficiaries of two insurance policies owned by and insuring the life of Grongie K. Ward. (Compl. [1] at ¶¶ 13, 26.) It is believed that Grongie Ward died on February 15, 2004; however, his body has never been found. (Id. at ¶ 26.) Following Grongie's presumed death, defendant Preston Ward submitted a Claimant's Statement requesting approximately $550,000 in benefits related to the insurance policies. (Id. at ¶ 37.) Plaintiff American General, the issuer of both policies, subsequently filed this action seeking a declaratory judgment that the policies are void because of material misrepresentations in Grongie's applications for life insurance.[1] (Id. at ¶¶ 40-46.)

In their answer, defendants asserted numerous counterclaims based on state and federal law. (Defs.' Answer and Counterclaims [5].) Plaintiff filed motions to dismiss the majority of those claims, which the Court granted in part. (Order [48].) In particular, the Court granted plaintiff's motion to dismiss

---

[1] For example, plaintiff claims that Grongie used his middle name "Katia" on one application after his prior application was denied when he screened positive for cocaine metabolites. (Compl. [1] at ¶ 29.) Plaintiff also claims that Grongie's signature on both applications was forged. (Id. at ¶¶ 33-34.)

defendants' fraud claims for failure to comply with the particularity requirement of Rule 9(b). (*Id.* at 24.) However, the Court gave defendants "one final opportunity to amend their [fraud] claims" to comply with Rule 9(b). (*Id.*)

Defendants timely filed their amended fraud claims on April 13, 2007. (Defs.' Amended Fraud Claims [50].) Plaintiff has filed a motion to dismiss these claims. (Pl.'s Mot. to Dismiss [54].) Plaintiff has also filed a motion to strike the report of Marcus Pittman, who has been retained by plaintiff as a handwriting expert. (Pl.'s Mot. to Strike [70].) Both of plaintiff's motions, and several related motions filed by defendants, are presently before the Court.

## DISCUSSION

### I. Defendants have not pled fraud with sufficient particularity to comply with the federal rules.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with Rule 9(b), defendants must set forth:

1) precisely what statements were made in what documents or oral representations or what omissions were made, and

2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

3

    3)    the content of such statements and the manner in which they misled [defendants], and

    4)    what [plaintiff] obtained as a consequence of the fraud.

Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002)(citing Ziemba v. Cascade Int'l Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). See also Cooper v. Blue Cross & Blue Shield, 19 F.3d 562, 568 (11th Cir. 1994)("The . . . complaint must allege the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them.")

In its prior order, the Court provided specific instructions to defendants concerning the requirements of Rule 9(b). (Order [48] at 22-24.) Nevertheless, defendants' amended fraud claims do not come close to complying with the rule. (See Defs.' Amended Counterclaims [50].) Like the original version, defendants' amended claims primarily rely on the vague assertion that plaintiff has committed "racketeering, nefarious, fraudulent and criminal activities in furtherance of its illicit and illegal schemes." (Id. at 2.) Without any more specific details, the Court is at a loss as to what that statement means and whether it supports a fraud claim. It certainly does not meet Rule 9(b)'s requirement that the circumstances surrounding any alleged fraud be pled with particularity.

The only facts that are described by defendants in any detail

4

relate to plaintiff's alleged bad faith during the claims handling process.[2] (*Id.* at 5-16.) According to defendants, plaintiff "maliciously" denied defendants' legitimate claims to insurance proceeds after conducting a "sham of a claims investigation." (*Id.* at 3-4.) Plaintiff's conduct during the claims handling process, even assuming that it involved bad faith, does not necessarily constitute actionable fraud. *Compare Johnson v. Rodier*, 242 Ga. App. 496, 498, 529 S.E. 2d 442, 444 (2000) ("The tort of fraud has five elements: a false representation by defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.") and *Bayrock Mortgage Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19, 648 S.E. 2d 433, 435 (2007)("To prevail on a claim for an insurer's bad faith [failure to pay a claim] the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."). As the Court has repeatedly stated, an essential element of a fraud claim is a "false representation." *Johnson*, 242 Ga. App. at 498, 529

---

[2]. Defendants also repeat their allegation that plaintiff "targeted" Grongie and other "poor Southern African Americans" and induced these individuals to purchase insurance policies. (Defs.' Amended Counterclaims [50] at 4-5.) However, defendants do not identify any specific misrepresentations that were made to Grongie or other "poor Southern African Americans." (*Id.*)

5

S.E. 2d at 444. That plaintiff denied a claim that it should have paid does not demonstrate a "false representation."

In addition, Rule 9(b) requires that a fraud claimant supply basic information about the allegedly false representation. FED. R. CIV. P. 9(b). That information includes precisely what statements were made, when, and by whom. *Clausen*, 290 F.3d at 1310. In its prior order, the Court specifically instructed defendants to "identify a false representation or misleading omission and set forth 'the details of [plaintiff's] allegedly fraudulent acts, when they occurred, and who engaged in them.'" (Order [48] at 25 (citing *Hill v. Morehouse Med. Assoc., Inc.*, 2003 WL 22019936 at *3 (11th Cir. 2003).) They have not done so. Accordingly, plaintiff's motion to dismiss defendants' amended fraud claims should be **GRANTED**.

The Court indicated in its prior order that any discovery pertinent only to defendants' fraud claims could await resolution of the present motion. (Order [48] at 25.) As the fraud claims have been dismissed, there is no need to reopen discovery.

II. **Marcus Pittman's expert report is not admissible.**

Following plaintiff's motion to dismiss, defendants filed a motion to supplement their counterclaim and their response to plaintiff's motion with a reference to Marcus Pittman's expert report. (Defs.' Mots. to Supplement [60] and [61].) Mr. Pittman identifies himself as a "Qualified Forensic Questioned Document

6

Examiner." (Pittman Report at 1, attached to Defs.' Mot. to Supplement [60].) He was requested by defense counsel to analyze Grongie's handwriting to determine whether the life insurance applications were forged, as plaintiff alleges. (*Id.*) He determined that Grongie's signature was not forged. (*Id.* at 5.)

Plaintiff filed a motion to strike the Pittman report. (Pl.'s Mot. to Strike [70].) Plaintiff argued that the Pittman report did not comply with Rule 26 of the Federal Rules of Civil Procedure because it did not completely describe Mr. Pittman's methodology or the basis for his opinion. (*Id.* at 5.) Plaintiff noted, further, that the report failed to list Mr. Pittman's qualifications, publications, trials he has testified in, or the compensation to be paid for his services. (*Id.*)

In response to plaintiff's motion to strike, defendants requested leave to revise the Pittman report. (Defs.' Mot. to Revise Pittman Report [75].) Defendants attached a revised report to their motion, which they believed would address all of the deficiencies identified by plaintiff. (Revised Pittman Report, attached to Defs.' Mot. to Revise [75].) According to defendants, the revised report rendered plaintiff's motion to strike moot because it supplied all of the information required by Rule 26. (*Id.*)

The Court **GRANTS** plaintiff's motion for leave [75] and [76] and has considered Pittman's revised report. However, the Court agrees

7

with plaintiff that the revised report still does not contain all of the information required by Rule 26. In addition, the Court finds that Pittman's report is not admissible as an "expert report" under Rule 702 of the Federal Rules of Evidence.

**A. The revised Pittman report does not comply with Rule 26.**

Rule 26 requires parties to disclose the following information concerning expert witnesses: 1) a complete statement of the expert's opinions and the basis therefor; (2) the data or other information considered by the expert in forming the opinions; (3) any exhibits to be used as a summary of or support for the opinions; (4) the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; (5) the compensation to be paid for the study and testimony; and (6) a listing of any other cases in which the witness has testified as an expert. FED. R. CIV. P. 26(a)(2)(B). The initial report submitted by plaintiff lacked any information concerning Pittman's qualifications, his publications, the cases in which he had testified, or the compensation he was to be paid in connection with the case. Plaintiff's motion to strike the report under Rule 26 was thus valid. See FED. R. CIV. P. 37(c)(1)("If a party fails to provide information or identify a witness as required by Rule 26(a) . . .the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

8

Pittman's revised report contains a CV listing Mr. Pittman's qualifications. (Revised Pittman Report at 7-13.) However, the revised report does not indicate the compensation that Mr. Pittman received in connection with the case, and does not contain a list of publications or cases in which Mr. Pittman has testified as an expert. (*Id.*) The revised report is thus subject to dismissal under Rule 26, particularly as defendants have failed to submit a report that complies with the rule after two attempts and specific guidance from plaintiff's counsel concerning the requirements of the federal rules.

### B. Pittman does not qualify as an expert under Rule 702.

More importantly, Pittman does not qualify as an expert witness under Rule 702 of the Federal Rules of Evidence. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993). In *Daubert*, the Supreme Court concluded that Rule 702 governs the admissibility of expert testimony. *Id.* Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

FED. R. EVID. 702. Pursuant to Rule 702, scientific expert testimony is admissible when: (1) the expert is qualified to testify competently; (2) the expert's methodology is reliable; and (3) the

9

expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue in the case. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999).

The *Daubert* Court emphasized the district court's "gatekeeping" role to ensure that scientific testimony is relevant and reliable before it is admitted as evidence. *Daubert*, 509 U.S. at 589. *See also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1342 (11th Cir. 2003) (noting "the repeated emphasis the Supreme Court has placed upon the district court's 'gatekeeping' role in the determination of whether expert evidence should be admitted"). This gatekeeping obligation applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The overarching goal of *Daubert's* gatekeeping requirement is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

The proponent of expert testimony bears the burden of demonstrating that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004). *See*

also, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1238 (11th Cir. 2005) (recognizing that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion") (citing *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004)). As discussed below, defendants have not met their burden of showing that Pittman is qualified, or that his opinions are reliable.

### 1. Qualification

Pittman is the Assistant Chief Investigator for the Clayton County Solicitor General's Office. (Revised Pittman Report at 7.) He has been involved in law enforcement since 1987. (*Id.* at 8.) He has conducted "questioned document" examinations in the course of his employment since 1997. (*Id.* at 2.) However, his duties are not limited to document examination. (*Id.* at 7-13.) They also include routine law enforcement functions such as preparing criminal cases for trial in Clayton County, interviewing witnesses, transporting witnesses and evidence, obtaining arrest and search warrants, and issuing citations. (*Id.*) Pittman has taken two "questioned document" courses offered by the United States Department of Treasury, and received a total of 104 hours of instruction on this topic. (Revised Pittman Report at 12.) In a summary of his qualifications, Pittman states that he "ha[s] provided questioned document examination services to law enforcement agencies, Attorneys

11

at Law, Private individuals, and private cooperation businesses throughout the State of Georgia." (*Id.* at 5.)

Although he holds himself out as a "qualified" questioned document examiner, the Court finds it significant that Mr. Pittman is not accredited by the American Board of Forensic Document Examiners (the "ABFDE"). The ABFDE is the "only recognized organization for accrediting forensic document examiners." *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1342 (N.D. Ga. 2003). Courts have highlighted ABFDE certification and membership as an important factor in determining a document examiner's qualifications. *Id. See also Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp. 2d 1373, 1379, n. 16 (M.D. Ga. 2006)(noting the importance of ABFDE certification and membership).

Likewise, although Pittman has received 104 hours of instruction in document examination, there is no evidence that he has ever taken a certification examination or a proficiency test. Neither is there any evidence that Pittman received training through the "guild-type" apprenticeship process, by which supervised trainees typically study and perfect methods of document examination. *Wolf*, 253 F. Supp. 2d at 1342.

Finally, although Pittman performs document examinations during the course of his employment with Clayton County, his job duties do not appear to be exclusively or even particularly focused on document examination. *Compare United States v. Paul*, 175 F.3d 906, 911 (11th

12

Cir. 1999)(qualifying a handwriting expert who had been a full-time handwriting examiner for thirty years, was a member of four professional handwriting analysis organizations, and lectured and taught extensively in the field of handwriting analysis). Considering all of these factors, the Court finds that Pittman is not qualified to testify as an expert in this case. Accordingly, plaintiff's motion to strike his report should be **GRANTED**.

### 2. Reliable Methodology

In addition, Pittman's opinions are not sufficiently reliable to be admitted under Rule 702 and the standards of *Daubert*. Even a "'supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based on some recognized scientific method.'" *McDowell*, 392 F.3d at 1298 (citing *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999)). To fulfill its gatekeeper obligation under *Daubert*, the Court must ensure that scientific evidence is "the product of reliable principles and methods" and "must screen out 'expert' testimony that is not sufficiently . . . trustworthy for the factfinder to consider." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).

The Supreme Court has identified several non-exclusive factors that a court may consider when evaluating whether a particular theory or study is reliable: (1) whether the theory in question can be and has been empirically tested; (2) whether the theory in question has

13

been subjected to peer review and publication; (3) the theory's known or potential error rate; and (4) whether the theory is generally accepted in the field. *Daubert*, 509 U.S. at 593-95. As the Court emphasized in *Kumho Tire*, however, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. The pertinence of the *Daubert* reliability factors "depends on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Brown*, 415 F.3d at 1268(citing *Kumho Tire*, 526 U.S. at 150).

The most fundamental problem with the revised Pittman report is its lack of any identifiable "methodology" to which the Court can apply the *Daubert* factors. The closest Pittman comes to describing his methods is in the following statement:

> Handwriting examination and identification is based on the scientific principal that "no two persons write the same way" and that "no person writes exactly the same way twice in succession. . . . So in each case, the examiner must mentally compare it with all the writing he has ever seen and be able to determine whether each feature is common, rare, or somewhat in between in order to determine how much significance to attribute to the feature.

(Revised Pittman Report at 2.) This statement is not so much a "methodology" as a general observation about handwriting that, while probably true, is not very enlightening.

Pittman also explains in his report that "a number of variables

14

can, and will be a factor in examining and evaluating a persons handwriting." (*Id.*) However, he does not state what those variables are. Pittman's lack of specificity makes it difficult to evaluate his methodology, but suggests that his report is not reliable.

The *Daubert* factors, to the extent they can be applied, suggest the same. Pittman does not state whether his observations have been empirically tested or whether his handwriting comparisons have an acceptable known or potential error rate. Pittman claims that various "texts, research, journals, periodicals, and other publications" informed his opinion, but he does not cite any particular source. (*Id.*) It is thus unclear whether his "methodology" has been published or subjected to peer review. Neither is there any indication that Pittman's method is "generally accepted" in the field, beyond his conclusory statement that his opinions "are the product of reliable law enforcement principles." (*Id.* at 1.)

### 3. State law does not govern this issue.

Defendants apparently concede that Pittman does not qualify as a handwriting expert under the applicable federal standard. (*See* Defs.' Reply [78].) However, defendants argue that Georgia's competency rules should govern the admissibility of Pittman's report, because this case is based on state substantive law. (*Id.* at 8.) According to defendants, numerous Georgia courts have admitted

Pittman as a handwriting expert. (*Id.* at 9.) Because the case is based on state law, defendants argue, this Court "must yield" to the decision of various Georgia courts to admit Pittman as an expert. (*Id.*)

In a federal case involving state substantive law, the Court must first determine whether the expert is competent to testify under state law. *McDowell*, 392 F.3d at 1295. Defendants are thus correct that Pittman must be competent under Georgia law to testify as an expert in this case. Even if the state competency rules are satisfied, however, the Court still must decide whether the expert's testimony is admissible under Federal Rule 702. *Id.* If the expert fails to satisfy *either* the state's competency rules or the requirements of Rule 702, his testimony should be excluded. *Id.* (emphasis added).

Assuming Pittman has been found competent to testify by various Georgia courts, he still does not meet the requirements of Rule 702. Accordingly, he cannot testify as an expert in this case. The Court thus **GRANTS** plaintiff's motion to strike Pittman's report and **DENIES** defendants' motions to supplement their response and counterclaims with a reference to Pittman's report.

16

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motions to Exceed Page Limits [58] and [71], **GRANTS** plaintiff's Motion to Dismiss Defendants' Amended Fraud and RICO Claims [54], **DENIES** defendants' Motions to Supplement [60] and [61], **GRANTS** plaintiff's Motion to Strike Marcus Pittman's Expert Report [70], and **GRANTS** defendant's Motion for Leave to Revise Pittman's Expert Report [75] and [76].

SO ORDERED, this 2 day of December, 2007. [handwritten: 2 Jan 2008]

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A (Rev.8/82)